IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

PRO FLEXX LLC,              )    Civ. No. 20-00512 SOM-KJM
                     )
    Plaintiff,     )    ORDER GRANTING IN PART AND
                     )    DENYING IN PART MOTION TO
vs.                 )    DISMISS
                     )
GREG HIROSHI YOSHIDA dba GY  )
FITNESS;             )
                     )
ROSELYN ESTRADA BUMANGLAG dba )
GY FITNESS;         )
                     )
GY FITNESS TRAINING AND    )
NUTRITION, LLC, dba GY     )
FITNESS AND NUTRITION, et al. )
                     )
    Defendants.      )
_____

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

**I.        INTRODUCTION.**

This case, removed to this court on the basis of federal question jurisdiction, concerns a business dispute involving former colleagues who are now competitors. Plaintiff Pro Flexx LLC says that one of its members and managers, Defendant Greg Hiroshi Yoshida, and a volunteer, Defendant Roselyn Estrada Bumanglag, took and used its confidential business information to create and operate a competing business, Defendant GY Fitness Training and Nutrition.

Pro Flexx asserts 17 claims against the Defendants in this removed case. *See* First Amended Complaint, ECF No. 1-2. Defendants seek dismissal of Counts 1, 2, 3, 6, 7, 8, 10, 11, 12, 13, and 15 of the First Amended Complaint. *See* ECF No. 7. Pro

Flexx has agreed to dismiss of Counts 2, 3, 6, 12, and 15.  The remainder of the motion is granted in part and denied in part.

II.        STANDARD.

        Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of a complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).  On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

        "[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.    BACKGROUND.

While Defendants' motion attempts to frame the facts in this business dispute, this court's review is limited to the facts alleged in the First Amended Complaint.  Accordingly, for purposes of this motion, the court ignores Defendants' contention that they started a competing business only after being locked out of Pro Flexx and focuses only on the allegations contained in the First Amended Complaint.

Pro Flexx "is a seller of body building, weight lifting, and health supplements, supplies, equipment and related services."  ECF No. 1-2, PageID # 8.

On or about September 9, 2016, Yoshida created Pro
Flexx by filing its Article of Organization for Limited Liability
Company with the Hawaii Department of Commerce and Consumer
Affairs.  Pro Flexx has two member-managers, Yoshida and Kelly
Anderson.  *Id.*, PageID #s 9-10.  As a member and manager, Yoshida
had access to Pro Flexx's computer system that tracked

> such confidential data and information as
> customers' names, addresses, email addresses,
> sales history, and financial information,
> along with data and information on inventory
> levels, which inventory sold the best,
> pricing (wholesale and retail), and other
> confidential, private and valuable data
> belonging to [Pro Flexx].  Additionally, . .
> . Yoshida had access to supplier data and
> information for [Pro Flexx] . . . .

*Id.*, PageID # 10.  The First Amended Complaint refers to this
data and information as "Trade Secrets," and alleges that the
information is not generally known to the public, was accumulated
through Pro Flexx's efforts and business dealings, and was
reasonably protected from disclosure.  *Id.*, PageID # 11.

The First Amended Complaint alleges that Yoshida is now
doing business as GY Fitness, which was created on September 15,
2020, and competes directly with Pro Flexx in selling body
building goods and services.[1]  Bumanglag, the former Pro Flexx

---

[1]According to the DCCA website, GY Fitness appears to be a
reference to GY Fitness Training and Nutrition, LLC, the
Defendant in this case and a company registered on September 15,
2020, whose agent is Yoshida.  *See*
https://hbe.ehawaii.gov/documents/business.html?fileNumber=242701
C5 (last visited January 19, 2021).

volunteer, is allegedly Yoshida's girlfriend and managing GY
Fitness with Yoshida. *Id.*, PageID #s 11-13.

The First Amended Complaint contends that, as a member
and manager of Pro Flexx, Yoshida owes a fiduciary duty and a
duty of loyalty to it under section 428-409 of the Hawaii Revised
Statutes.  *Id.*, PageID # 12.

The First Amended Complaint alleges that Bumanglag
volunteered with Pro Flexx and executed an agreement with Pro
Flexx that she would 1) loyally and conscientiously perform all
of the duties required of her; 2) "not directly or indirectly
solicit, induce, recruit or encourage any of the Company's
employees, representatives, or consultants to terminate their
relationship with the Company"; 3) "not, for a period of 24
months following cessation of employment with the Company . . .
[,] attempt to negatively influence any of the Company's clients
or customers from purchasing Company products or services or to
solicit or influence or attempt to influence any customer or
other person either directly or indirectly, to direct his, her or
its purchase of products and/or services to any person, firm,
corporation, institution or other entity in competition with the
business of the Company"; and 4) indefinitely . . . agree . . .
[to refrain from] directly or indirectly, defam[ing],
disparag[ing], creat[ing] false impressions, or otherwise
put[ting] in a false or bad light the Company, its products or

5

services, its business, reputation, conduct, practices, past or present employees, financial condition or otherwise." *Id.*, PageID #s 13-14.

The table below summarizes the seventeen counts asserted in the First Amended Complaint, as well as this court's ruling with respect to this motion to dismiss.

| Count | Against Defendant | Result |
|---|---|---|
| 1 – Breach of Contract | Bumanglag | Motion to dismiss denied |
| 2– Breach of the Covenant of Good Faith and Fair Dealing | Bumanglag | Dismissed by Pro Flexx |
| 3 – Conversion | Yoshida, Bumanglag, and GY Fitness | Dismissed by Pro Flexx |
| 4 – Violation of HRS Chapter 482B (Trade Secrets) | Yoshida, Bumanglag, and GY Fitness | Not subject of motion to dismiss |
| 5 – Violation of Defend Trade Secret Act, 18 U.S.C. § 1836 | Yoshida, Bumanglag, and GY Fitness | Not subject of motion to dismiss |
| 6 – Common Law Misappropriation of Confidential Information and Trade Secrets | Yoshida, Bumanglag, and GY Fitness | Dismissed by Pro Flexx |
| 7 – Tortious Interference with Contractual Relations | Yoshida, Bumanglag, and GY Fitness | Motion to dismiss denied |
| 8 – Tortious Interference with Prospective Business Advantage | Yoshida, Bumanglag, and GY Fitness | Motion to dismiss denied |

6

| | | |
|---|---|---|
| 9 - Breach of Fiduciary Duty and Duty of Loyalty under section 428-409 of Hawaii Revised Statutes | Yoshida | Not subject of motion to dismiss |
| 10 - Unfair Competition and Unfair and Deceptive Trade Practice under Chapter 480 of Hawaii Revised Statutes | Yoshida | Motion to dismiss denied with respect to unfair method of competition claim, but granted with respect to unfair or deceptive trade practice claim. |
| 11 - Unfair Competition and Unfair and Deceptive Trade Practice under Chapter 480 of Hawaii Revised Statutes | Bumanglag and GY Fitness Training | Motion to dismiss denied with respect to unfair method of competition claim, but granted with respect to unfair or deceptive trade practice claim. |
| 12 - Restitution / Equitable Lien / Constructive Trust / Unjust Enrichment | Yoshida, Bumanglag, and GY Fitness | Dismissed by Pro Flexx |
| 13 - Civil Conspiracy | Yoshida, Bumanglag, and GY Fitness | Motion to dismiss denied |
| 14 - Racketeer Influenced and Corrupt Organizations Act | Yoshida, Bumanglag, and GY Fitness | Not subject of motion to dismiss |
| 15 - Injunctive Relief | Yoshida, Bumanglag, and GY Fitness | Dismissed by Pro Flexx |
| 16 - Accounting | Yoshida, Bumanglag, and GY Fitness | Not subject of motion to dismiss |
| 17 - Expulsion | Yoshida | Not subject of motion to dismiss |

IV.      ANALYSIS.

     A.   **The Motion to Dismiss is Denied With Respect to Count 1 (Breach of Contract Claim Against Bumanglag).**

Count 1 of the First Amended Complaint asserts that Bumanglag breached her agreement with Pro Flexx.  The Motion to Dismiss argues with little analysis that Count 1 should be dismissed as an improper restraint on trade, contending that the primary purpose of the restrictive covenants in Bumanglag's agreement was to limit competition, and that the restrictive covenants are therefore void under section 480-4 of Hawaii Revised Statutes.

Count 1 does not specifically allege how Bumanglag breached her agreement with Pro Flexx, instead incorporating by reference preceding paragraphs.  *See id.*, PageID # 16.  The early paragraphs of the First Amended Complaint allege that Bumanglag sold body building goods and services either individually or in cooperation with Yoshida and that these actions violated the agreement in four ways: 1) Bumanglag failed to loyally and conscientiously perform all of the duties required of her; 2) Bumanglag violated her nonsolicitation agreement; 3) Bumanglag violated her noncompete agreement; and 4) Bumanglag violated her nondisparagment agreement.  *See id.*, PageID #s 13-14.

The memorandum accompanying the motion to dismiss provides no discussion as to why the breach of contract claim

8

should be dismissed to the extent it is based on Bumanglag's alleged failure to act loyally and conscientiously to perform all of the duties required of her.  A movant has the burden of persuading a court to grant the relief requested.  Persuasion requires more than an assertion of a right to relief.  To the extent the motion can be read as seeking dismissal of that part of the breach of contract claim asserted in Count 1, it is denied.

With respect to the nonsolicitation, noncompete, and nondisparagement clauses allegedly breached by Bumanglag, the court looks to section 480-4 of Hawaii Revised Statutes, which provides:

> (a) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the State, or in any section of this State is illegal.
>
> . . . .
>
> (c) . . . [W]ithout limiting the application of subsection (a), it shall be lawful for a person to enter into any of the following restrictive covenants or agreements ancillary to a legitimate purpose not violative of this chapter, unless the effect thereof may be substantially to lessen competition or to tend to create a monopoly in any line of commerce in any section of the State:
>
> . . . ;
>
> (2) A covenant or agreement between partners not to compete with the partnership within a reasonable area and for a reasonable period of time upon the

9

withdrawal of a partner from the
partnership;

. . . ;

(4) A covenant or agreement by an
employee or agent not to use the trade
secrets of the employer or principal in
competition with the employee's or
agent's employer or principal, during
the term of the agency or thereafter, or
after the termination of employment,
within such time as may be reasonably
necessary for the protection of the
employer or principal, without imposing
undue hardship on the employee or agent.

(d) Except as provided in subsection (c)(4),
it shall be prohibited to include a
noncompete clause or a nonsolicit clause in
any employment contract relating to an
employee of a technology business.  The
clause shall be void and of no force and
effect.

. . . .

"Noncompete clause" means a clause in an
employment contract that prohibits an
employee from working in a specific
geographic area for a specific period of time
after leaving employment with the employer.

"Nonsolicit clause" means a clause in an
employment contract that prohibits an
employee from soliciting employees of the
employer after leaving employment with the
employer.

Defendants' motion to dismiss fails to identify or discuss how

the nonsolicitation, noncompete, and nondisparagement clauses of

Bumanglag's agreement with Pro Flexx violates section 480-4.  For

that reason, it is denied.

10

At best, the motion can be read as arguing that the agreement contains provisions that amount to a restraint of trade.  However, the motion contains no discussion with respect to whether a nondisparagement clause is an improper restraint of trade.  This court therefore leaves that issue for further adjudication.

Additionally, not every noncompete and nonsolicitation clause is an improper restraint on trade.  Section 480-4(a) of Hawaii Revised Statutes prohibits contracts "in restraint of trade or commerce in the State, or in any section of this State." However, section 480-4(c) contains exemptions to that prohibition for certain noncompete and nonsolicitation clauses "ancillary to a legitimate purpose not violative of this chapter, unless the effect thereof may be substantially to lessen competition or to tend to create a monopoly in any line of commerce in any section of the State."  The present motion fails to meet its burden of demonstrating that the noncompete and nonsolicitation clauses in Bumanglag's agreement with Pro Flex fall outside any exemption in section 480-4(c).

Not until their Reply do Defendants argue for the first time that the restrictive covenants in the agreement are too broad.  Local Rule 7.2 provides that "[a]ny argument raised for the first time in the reply shall be disregarded."  This court leaves for further adjudication whether the noncompete and

11

nonsolicitation clauses properly fall within an exemption in section 480-4(c). To hold otherwise at this point would unfairly deprive Pro Flexx of the opportunity to properly brief the matter to this court.

In summary, this court denies the motion to dismiss with respect to Count 1 of the First Amended Complaint.

> **B.  The Motion to Dismiss is Denied With Respect to Counts 7 and 8 (Tortious Interference with Contractual Relations and Tortious Interference with Prospective Business Advantage Against Yoshida, Bumanglag, and GY Fitness).**

Count 7 of the First Amended Complaint asserts a tortious interference with contractual relations claim against Yoshida, Bumanglag, and GY Fitness. Specifically, Count 7 alleges that Defendants intentionally induced Pro Flexx's customers, suppliers, athletes, and promoters who had contracts with Pro Flexx to breach or discontinue those contracts. *See* ECF No. 1-2, PageID # 20. In Hawaii, the elements of a tortious interference with contractual relations claim are:

> (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff.

*Buscher v. Boning*, 114 Haw. 202, 215 n.6, 159 P.3d 814, 827 n.6 (2007) (quoting *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Haw. 251, 267 n.17, 151 P.3d 732, 748 n.17 (2007)).

Count 8 of the First Amended Complaint asserts an intentional or tortious interference with prospective business advantage claim against Yoshida, Bumanglag, and GY Fitness. Count 8 alleges that Defendants purposely interfered with Pro Flexx's business agreements and relationships with its customers, suppliers, athletes, and promoters that Defendants knew about, "especially with Defendants being in possession of the Trade Secrets." *Id.*, PageID # 21.  In Hawaii, the elements of a tortious interference with prospective business advantage claim are:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Field, Tr. of Estate of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n*, 143 Haw. 362, 378, 431 P.3d 735, 751 (2018)

(quoting *Robert's Hawaii Sch. Bus., Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 258, 982 P.2d 853, 887 (1999)).

Defendants seek dismissal of the tortious interference claims asserted in Counts 7 and 8, arguing that they are preempted by the Hawaii Uniform Trade Secrets Act, section 482B-8 ("HUTSA"), which provides:

> (a) Except as provided in subsection (b) this chapter displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:
>
> > (1) Contractual remedies, whether or not based upon misappropriation of a trade secret;
> >
> > (2) Other civil remedies that are not based upon misappropriation of a trade secret; or
> >
> > (3) Criminal remedies, whether or not based upon misappropriation of a trade secret.

To determine whether a claim is preempted by HUTSA, the Hawaii Supreme court has directed courts to use the "same proof" standard:

> Under this standard, if proof of a non-[H]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements of proof were necessary to establish it.  To the extent, however, that the claim is based upon wrongful conduct, independent of the

14

> misappropriation of trade secrets, it will
> not be preempted by the HUTSA.

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Haw. 314, 322,

235 P.3d 310, 318 (2010) (quotation marks, citation, and

alteration signals omitted).

Defendants' conclusory statement that the claims in

Counts 7 and 8 are necessarily based on misappropriation of trade

secrets is insufficient to demonstrate that the claims involve

the "same proof" for purposes of HUTSA preemption.  As Pro Flexx

indicated at the hearing, its tortious interference claims may be

based on interference with publicly known contracts.  In other

words, because it is possible that Counts 7 and 8 are not based

on misappropriation of trade secrets, the motion to dismiss is

denied without prejudice to raising the argument on a more

thorough record.

> **C.   The Motion to Dismiss is Granted in Part and
> Denied in Part With Respect to Counts 10 and 11
> (Chapter 480 claims Against Yoshida, Bumanglag,
> and GY Fitness).**

Counts 10 and 11 assert that Defendants violated

chapter 480-2(a) of Hawaii Revised Statutes, which declares,

"Unfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce are unlawful."

By its terms, section 480-2(a) prohibits two types of activity--

unfair methods of competition ("UMOC") and unfair or deceptive

acts or practices ("UDAP").

With respect to UDAP claims, section 480-2(c) states, "No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section."  Section 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  In *Association of Apartment Owners of Newtown Meadows ex rel. its Board of Directors v. Venture 15, Inc.*, 115 Haw. 232, 252, 167 P.3d 225, 245 (2007), the Hawaii Supreme Court ruled that an association of apartment owners ("AOAO") was not a consumer and therefore lacked standing to pursue a UDAP claim:

> Inasmuch as the AOAO is clearly not the attorney general or the director of the office of consumer protection, it may only bring an action based upon unfair or deceptive acts or practices declared unlawful by HRS § 480-2 if it is a "consumer" within the meaning of HRS § 480-1.  The parties in this case do not dispute that the AOAO is an unincorporated association. . . . An unincorporated association, however, is not a natural person.  Consequently, an unincorporated association is not a "consumer" as defined by HRS § 480-1.  The AOAO, therefore, lacks standing to bring an action based upon unfair or deceptive acts or practices declared unlawful by HRS § 480-2.

*Id.* (quotation marks, citations, and alteration signals omitted); *see also Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 107 Haw. 423, 435, 114 P.3d 929, 941 (App. 2005) (determining that a corporation lacked standing to bring a UDAP claim under HRS § 480-2 inasmuch as "a corporation is not a natural person").  At the hearing on the present motion to dismiss, Pro Flexx conceded that it is an entity and is therefore not a natural person, meaning that it lacks standing to pursue the UDAP claims asserted in Counts 10 and 11.  The UDAP claims asserted in Counts 10 and 11 are therefore dismissed with prejudice.

Although an LLC like Pro Flexx lacks standing to assert UDAP claims under HRS § 480-2, the Hawaii Supreme Court has ruled that "any person may bring a claim of unfair methods of competition based upon conduct that could also support a claim of unfair or deceptive acts or practices as long as the nature of the competition is sufficiently alleged in the complaint."[2]  *Haw. Med. Ass'n v. Hawaii Med. Serv. Assn.*, 113 Haw. 77, 113, 148 P.3d 1179, 1215 (2006); *see also* Haw. Rev. Stat. § 480-2(e) (stating,

---

[2] Section 480-1 defines "person" as including "individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations, existing under or authorized by the laws of this State, or any other state, or any foreign country."  Accordingly, Hawaii courts have allowed UMOC claims to be asserted by entities like Pro Flexx.  *See, e.g., Haw. Med. Ass'n*, 113 Haw. at 113-14, 148 P.3d at 1215-16.

"Any person may bring an action based on unfair methods of competition declared unlawful by this section.").

However, with respect to UMOC claims, "the nature of the competition must be sufficiently alleged" in the complaint. *Id.* at 111, 148 P.3d at 1213.

> [I]n the absence of such allegations, the distinction between claims of unfair or deceptive acts or practices and claims of unfair methods of competition that are based upon such acts or practices would be lost where both claims are based on unfair and deceptive acts or practices.  In other words, the existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition.

*Id.* at 111-12, 148 P.3d at 1213-14.  For a successful UMOC claim, a plaintiff must ultimately show "how the defendant's conduct negatively affects competition or harms fair competition." *Field, Tr. of Estate of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n*, 143 Haw. 362, 372, 431 P.3d 735, 745 (2018) (quotation marks and citations omitted).

In *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 437, 228 P.3d 303, 317 (2010), service employees had sued the Four Seasons Hotel for distributing to nonservice employees a portion of service charges collected from customers without informing customers of the practice, in contravention of section 481B-14 of Hawaii Revised Statutes.  Under section 481B-4, any person violating chapter 481B "shall be deemed to have engaged in an

18

unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2." However, because employees are not "consumers," the court noted that the service employees could not bring UDAP claims. Citing *Hawaii Medical Association*, the Supreme Court ruled that the employees could nevertheless assert UMOC claims based on conduct that would also support UDAP claims so long as the nature of the competition was alleged in the complaint. The Hawaii Supreme Court ultimately ruled in *Davis* that the service employees had failed to properly plead how the Four Seasons Hotel's conduct negatively affected competition, as the employees' complaint had only alleged that they were injured by not receiving a portion of the service charge retained by the hotel. *Id.* at 437-38, 228 P.3d at 317-18.

In *Gurrobat v. HTH Corporation*, 133 Haw. 1, 323 P.3d 792 (2014), the Hawaii Supreme Court once again examined the nature of the competition requirement for UMOC claims in a hotel service charge case. *See id.* at 16-17, 323 P.3d at 807-08. Unlike in *Davis*, Gurrobat had alleged in the operative complaint how the hotel's conduct had negatively affected competition--the hotel's "practice of withholding a portion of the service charge without disclosure to customers allowed them to charge lower base prices than law-compliant competitors, thereby reducing 'fair competition' in the market for hotels, restaurants, and banquet

service providers." *Id.* at 22, 323 P.3d at 813.  In examining the propriety of summary judgment, the Hawaii Supreme Court found that there was a genuine issue of material fact as to the nature-of-competition requirement relating to the hotels' alleged noncompliance with the service-charge law.  The Hawaii Supreme Court noted that this noncompliance allowed the hotels to lower their overall prices and thereby obtain an "unfair and illegal business advantage" over competitors who complied with the service-charge law.  *Id.* at 22, 323 P.3d at 813.  In other words, showing that the conduct of the noncompliant hotels enabled them to create incentives for customers to choose their services over compliant competitors' services was sufficient to demonstrate that their conduct could have negatively affected competition. *Id.*

Defendants seek dismissal of the UMOC claims asserted in Counts 10 and 11, arguing that the First Amended Complaint fails to allege the nature of the competition and how Defendants' conduct harmed fair competition.  The First Amended Complaint alleges that Yoshida had access to Pro Flexx's computer system that tracked confidential data, including customers' names, addresses, email addresses, sales history, and financial information.  The computer system also contained information on inventory sales, wholesale and retail pricing, and supplier data. *See* ECF No. 1-2, PageID # 10.  The First Amended Complaint

alleges that this information "provide[s] a valuable competitive edge in a niche market like the market for Body Building Goods and Services," allowing the holder of the information "to save time and money marketing" those services.  *Id.*, PageID # 11.  The First Amended Complaint alleges that Defendants took and used the information in an manner that amounted to unfair competition. *Id.*, PageID # 22.

The allegations in this case with respect to the nature of the competition fall somewhere between the lack of any such allegations in *Davis* and the explicit allegations in *Gurrobat.* In seeking dismissal, Defendants have not addressed the "competitive edge" language in the First Amended Complaint and instead have argued in their motion and at the hearing that Pro Flexx has entirely failed to allege the nature of competition. Although the First Amended Complaint's "competitive edge" language is thin and thus presents a close case with respect to meeting the pleading requirements, it can be reasonably inferred from the First Amended Complaint that competitors who do not wrongfully possess the information have a higher marketing cost with respect to time and money than Defendants.  In other words, the First Amended Complaint can be fairly read as alleging that Defendants obtained an "unfair and illegal business advantage." In addition, the court recognizes that, on the present motion, it is Defendants who bear the burden of persuasion.  Given these

circumstances, this court declines to dismiss the UMOC claims asserted in Counts 10 and 11.

The court notes that Pro Flexx has stated that it desires to amend its operative complaint. If Pro Flexx does seek such leave, it might want to consider adding allegations to more explicitly allege the nature of the competition with respect to its UMOC claims.

### D. The Motion to Dismiss is Granted With Respect to Count 12 (Restitution, Equitable Lien, Constructive Trust, and Unjust Enrichment Against Yoshida, Bumanglag, and GY Fitness).

In Count 12, Pro Flexx seeks restitution, an equitable lien, and a constructive trust. Count 12 also asserts an unjust enrichment claim. In responding to the motion, partly in writing and partly at the hearing, Pro Flexx has agreed that Count 12 does not actually state claims but instead lists remedies it seeks if it prevails on substantive claims. Pro Flexx agreed to the dismissal of Count 12 but said it did so with the understanding that it could seek those remedies. Pro Flexx suggested at the hearing that it would be seeking leave to file a Second Amended Complaint, in which it could supplement the language in the prayer for relief. Count 12 is dismissed.

### E. The Motion to Dismiss is Denied With Respect to Count 13 (Civil Conspiracy Against Yoshida, Bumanglag, and GY Fitness).

Count 13 alleges a civil conspiracy. Under Hawaii law,

"the accepted definition of a conspiracy is a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999), *superseded by statute on other grounds as stated in Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 113 Haw. 77, 148 P.3d 1179 (2006) (citations omitted).

"Civil conspiracy does not alone constitute a claim for relief." *Robert's*, 982 P.2d at 889 n.44. For more than fifty years, the Hawaii Supreme Court has required an actionable claim underlying a civil conspiracy claim. In *Ellis v. Crockett*, 51 Haw. 45, 57, 451 P.2d 814, 822–23 (1969), for example, the court rejected a claim asserting a civil conspiracy to deceive when the complaint failed to set forth any actionable claim premised on deceit. This has led judges in this federal district court to state in cases involving alleged conspiracies to defraud that "A civil conspiracy claim . . . has three elements: (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and (3) damage." *Bralich v. Sullivan*, 2018 WL 1938297, at *10 (D. Haw. Apr. 23, 2018); *Young v. Bishop Estate*, 2009 WL 3763029, at *14 (D. Haw. Nov. 6, 2009) (dismissing civil conspiracy claim

23

based on a conspiracy to rig the state court system); *Valvanis v. Milgroom*, 2009 WL 1561575, at *11 (D. Haw. June 1, 2009) (involving fraudulent transfer claim).

While those elements may be correctly stated when, as occurred in those federal cases, the civil conspiracy claim rests on fraud, a civil conspiracy claim is not necessarily restricted to circumstances involving deceit.  Hawaii courts have stated that, "[f]or a civil conspiracy claim to be valid, an underlying tort must be shown."  *Farmer ex rel. Keomalu v. Hickam Fed. Credit Union*, 122 Haw. 201, 224 P.3d 455, 2010 WL 466007, at *16 (Ct. App. 2010) (unpublished disposition); *accord Jass v. CherryRoad Techs., Inc.*, 449 F. Supp. 3d 923, 928 (D. Haw. 2020) (dismissing civil conspiracy claim because no independent tort claim had been asserted).  Recently, in *Ching v. Dung*, __ Haw. __, __ P.3d __, 2020 WL 7488076 (Dec. 21, 2020), the Hawaii Supreme Court recognized a civil conspiracy claim based on the underlying tort of nuisance.  Similarly, in *Yoneji v. Yoneji*, 136 Haw. 11, 19, 354 P.3d 1160, 1168 (Ct. App. 2015), the Intermediate Court of Appeals for the State of Hawaii reversed a circuit court's grant of summary judgment to a defendant. Because the circuit court had erred in granting summary judgment with respect to conversion, unjust enrichment, and constructive fraud claims, the appellate court ruled that the circuit court had also erred in granting summary judgment in favor of the

defendant with respect to a civil conspiracy claim based on those underlying claims. *Id.* This court, in *Annan-Yartey v. Honolulu Police Department*, 475 F. Supp. 2d 1041, 1050 (D. Haw. 2007), similarly ruled that an allegation of malicious prosecution was sufficient to support an civil conspiracy claim.

Defendants seek dismissal of the civil conspiracy claim, arguing that it should be dismissed because the underlying claims fail. However, because this court has not dismissed all possible claims underlying the civil conspiracy claim, Defendants' argument fails. At a minimum, Defendants conceded that the civil conspiracy claim may be based on the UMOC claims asserted in Counts 10 and 11, which have not been dismissed. Accordingly, the motion to dismiss Count 13 is denied. This court does not reach the issue of whether the civil conspiracy claim may also be based on the tortious interference claims asserted in Counts 7 and 8, as the parties did not brief that issue.

**V.      CONCLUSION.**

The court grants in part and denies in part Defendants' motion to dismiss.

By agreement of Pro Flexx, the court dismisses Counts 2, 3, 6, 12, and 15 of the First Amended Complaint. Defendants have asked this court to dismiss those counts with prejudice. Pro Flexx, on the other hand, has asked this court to dismiss

those counts without prejudice.  The Ninth Circuit has stated, "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).  When asked at the hearing why the counts should be dismissed without prejudice, Pro Flexx argued that there is a possibility that the law might change and that the dismissed counts might then be viable.  Because Pro Flexx made no attempt to show how Counts 2, 3, 6, 12, and 15 could be amended to state viable claims, this court deems Pro Flexx to have waived any such argument.  The court therefore dismisses those counts with prejudice, to the extent the counts asserted claims rather than seeking remedies.  If Pro Flexx seeks leave to file a Second Amended Complaint, it may seek the remedies asserted in the dismissed counts as part of the prayer for relief with respect to applicable claims.  Of course, should the applicable law change with respect to any count dismissed with prejudice, Pro Flexx may seek relief from this order consistent with its right to do so.

The court also dismisses with prejudice the UDAP claims asserted in Counts 10 and 11 because Pro Flexx is not a "consumer" such that it has standing to assert a UDAP claim.

In all other respects, the motion to dismiss is denied. Accordingly, Counts 1, 4, 5, 7, 8, 9, 10 (UMOC claim), 11 (UMOC claim), 13, 14, 16, and 17 remain for adjudication.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 28, 2021.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*Pro Flexx LLC v. Yoshida, et al.*, Civ. No. 20-00512 SOM-KJM; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS.